6L 249
6L 238
8L 673
13L 473
4pi 184

6L 249
117 442

## WILLIAM HULL v. THE STATE.

1. CRIMINAL LAW. *Justifiable homicide.* If the defendant be assaulted, being determined not to fight except in self-defense, or being otherwise without fault in the particular transaction, or if in fault, after using all means in his power to escape, and is in danger, or on some reasonable ground thinks himself.in danger, of his life or great bodily harm, the killing of the assailant will be justifiable.

2. SAME. *Self-defense.* On the trial of a defendant for murder, where he set up that the killing was in self-defense, and the evidence showed that the defendant commenced the difficulty by shooting at the deceased, who thereupon attacked him, there is no error of which the defendant can complain in the following charge: "If he was making an assault upon the defendant which was reasonably sufficient to put him in fear that his life would, at the time of the killing, be taken,

Hull *v.* State.

or that great bodily harm would then be done him, and the proof shows there was reasonable ground to believe that it was necessary for him at that time to kill the deceased in order to save his own life or prevent great bodily harm from being done to him, it will be neither murder in the first or second degree, nor manslaughter, but will be self-defense."

3. SAME. *Same.* There was error in the charge, but error in favor of the defendant, in failing to call the attention of the jury to the qualification that the defendant should be in no fault, for if in fault he could not excuse himself as for a killing in self-defense, unless he had used all means in his power to escape before the fatal shot.

4. SAME. *Same.* To sustain the plea of self-defense in justification of the killing, the reasonable belief of danger and the actual fear must undoubtedly exist at the very moment the fatal deed is committed, although the greatest peril may precede the act by a small but appreciable interval of time, or the real danger might only follow, if the act be not done, by a like small but appreciable interval of time. In either of these contingencies, the danger is really "apparent, imminent and existing," or reasonably believed to be so at the time, and the use of these words, although not necessary, is not erroneous or misleading unless in a very exceptional case.

5. SAME. *Trespass. Deadly weapon.* If the defendant killed the deceased by the use of a deadly weapon, to prevent a trespass on the premises of his employer, it would be murder in the second degree.

6. SAME. *Same. Same.* If the defendant got his gun and went out to meet the deceased to expel or drive him off the premises of his employer, and he shot at him without other provocation, and provoked the deceased to make an attack upon him with a drawn knife, and he then shot and killed him to repel such assault, he was guilty of murder in the second degree.

FROM STEWART.

Appeal in error from the Circuit Court of Stewart county. J. E. RICE, J.

C. G. SMITH for Hull.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

The plaintiff in error was tried for murder, con-
victed of murder in the second degree, and sentenced
to imprisonment in the penitentiary for ten years.
He appealed in error.

Hull was in the employ of one Steele, and had
been for several years, living with him on his farm,
and having directions to look after and protect his
property.    Within the same enclosure as the residence
of Steele, were two houses about fifteen feet apart,.
one occupied by Mrs. Sinks and the other by Mrs.
Brooks, women also employed by Steele.    On the
night of the alleged murder, several persons, well known
to defendant, had come to the house of Mrs. Sinks,.
demanded admittance, and on being refused, had at-
tempted to break in.    Hull was called upon by the
woman to protect her, and after having knocked one
of the men down several times and had a pistol pre-
sented to his breast by another of the men, with a
threat to shoot, he succeeded, although unarmed, in
driving off the intruders.    About fifteen minutes after·
he had gone back into Steele's residence, the deceased
and another man, neither of whom had been present
on the previous occasion, knocked at the door of the·
other house, that of Mrs. Brooks, but upon. being
refused admittance, and told of the recent difficulty,.
turned and walked off.

The noise of the knocking at the door was heard
by Hull and his brother, who were sitting in Steele's
residence, and the latter remarked, " here they are

again." Defendant picked up a gun and went towards the door of the house he had previously protected, and fired the gun in the direction of the deceased and his companion, who were forty or fifty steps distant, and going from him. The shot struck the fence about thirty yards in front of the deceased. The deceased immediately turned and started towards. defendant, cursing, and saying, with an oath, if shooting is your game, here's at you. He walked rapidly, and when about twenty feet from defendant, was shot by him, by a second fire from the gun. The load, consisting of buck-shot, struck the deceased in the neck and breast, causing speedy death. The companion of the deceased testifies that he himself was not armed, and did not see any weapon in the hands of the deceased. They had both, up to the firing of the first gun, been quiet and orderly. The brother of defendant, who had closely followed him, says he saw no weapon in the hands of the deceased. A woman, who deposes that she was about one hundred yards from the place of shooting, says that she saw and knew the deceased when the first shot was fired, and noticed a weapon in his hand, which, as it gleamed in the moonlight, she thought was a pistol. She did not see deceased when he was shot, having run into a house. About daylight the next morning, and after the coroner's inquest had been held, another witness says he found, near Mrs. Sink's house, in a pool of blood, a large white-handled pocket knife, open, which was produced on the trial. One witness testifies, in rebuttal, that on a former trial, the woman examined had testified

that when the first shot was fired deceased was going from defendant, and at the firing she ran into the house and saw no more. Another witness testified that he saw defendant on the night of the killing, and heard him say, in answer to the question why he shot deceased, that when he fired the first time he did not know at whom he was shooting, but when deceased spoke after that shot he recognized his voice, but he had his gun up, and he just fired. The shooting took place about one hundred yards from the house in which the defendant lived. The defendant proved a good character as a quiet, peaceable person.

Upon these facts the position assumed in the defense, that the evidence is not sufficient to sustain the verdict, is clearly untenable. Whatever allowance may be made for the state of excitement into which the defendant was wrought by his recent struggle, there was no justification for his shooting with a gun loaded with buck-shot at two men forty or fifty steps distant and walking from him. He provoked the difficulty by an assault with a deadly weapon, and voluntarily continued to fight without the least effort to retreat or avoid the encounter. It was in this view, even if the deceased was armed, a voluntary engagement in combat by the defendant with a deadly weapon: *Copeland* v. *State*, 7 Hum., 479. And if the jury believed that the deceased was unarmed, and that the defendant, before he fired the fatal shot, knew the fact, and that the deceased was not a party to the previous fight, the verdict was unquestionably correct. Unless

there is some material error in the charge, therefore, the judgment must stand.

Error is assigned on the following paragraph of the charge:

" If the deceased was making an assault upon the defendant which was reasonably sufficient to put him in fear that his life would, at the time of the killing, be taken, or that great bodily harm would then be done him, and the proof shows there was reasonable ground to believe that it was necessary for him at that time to kill the deceased in order to save his own life or prevent great bodily harm from being done to him, it will be neither murder in the first or second degree, nor manslaughter, but will be self-defense, and you should acquit."

The objection taken to this charge is, that the ground of fear which would excuse is limited to the very time of killing, thereby implying that the defendant should have waited until the deceased came up to him. It is also said that so much of the clause as requires that the apprehension must be shown to be reasonable is in conflict with the ruling in *Greer* v. *State*, 6 Baxt., 629.

The leading case in this State on the law of self-defense, is *Grainger* v. *State*, 5 Yer., 459. The decision was, in substance, that if the defendant, a timid, cowardly man, in imminent peril of violent and instant assault, after using all means in his power to escape from an overbearing assailant, was in danger, or thought himself so, of great bodily harm, although in reality the assailant only designed to commit a battery on his

person without any intent to kill, the killing would be in self-defense. In *Morgan* v. *State*, 3 Sneed, 475, it was held that to justify the killing, "the proof ought to show that the prisoner's fears were founded on some reasonable ground." And in *Copeland* v. *State*, 7 Hum., 479, the rule of the principal case was extended to one who, although apprehending an assault, is yet determined not to fight, unless necessary for defense, while it was said not to apply to one who voluntarily, or of his own fault meets the danger, unless he does all he can to avoid the result. If a person bring on the affray by making the first attack, he cannot excuse himself as for a killing in self-defense, unless he has quitted the combat before a mortal blow is given, if the fierceness of his adversary permit, and retreated as far as he might with safety, and had then killed his adversary of necessity, to save his own life: *State* v. *Hill*, 4 Dev. & B., 491.

I understand our early authorities to say, that if the defendant be assaulted, being determined not to fight except in defense, or being otherwise without fault in the particular transaction, or, if in fault, after using all means in his power to escape, and is in danger, or, on some reasonable ground thinks himself in danger of his life or great bodily harm, the killing of the assailant will be justifiable. The rule, as usually stated in the American cases, is substantially the same. "If the individual assaulted, being himself without fault, reasonably apprehends death or great bodily harm to himself unless he kills the assailant,

the killing is justifiable ": 1 Bish. Crim. Law, sec. 865, and cases cited.

The doctrine of our early cases having been misunderstood, the subject was again considered in *Rippy* v. *State*, 2 Head, 218. The charge, which was sustained in that case, was: "That to excuse the defendant, the evidence ought to be such as to have reasonably satisfied him that the deceased, at the time of the killing, was doing some overt act, or making some demonstration showing a present intention to carry such threats into execution, otherwise it would not excuse him."

. The reason for this form of charge was, that the deceased had, long before and up to a short period of the killing, made violent threats. against the life of the defendant, and these threats having come to the knowledge of the defendant, it was contended that he had a right to kill the deceased on sight. The circuit judge was sustained in repudiating this doctrine, and Judge Caruthers, who delivers the opinion of the court, after stating that one case had come before the supreme court, in which the broad proposition contended for had been charged as law, undertook to lay down the law in a way to put an end to any such contention in the future. "The law on this subject is," he said, "to excuse a homicide, the danger of life, or great bodily injury, must either be real, or honestly believed to be so at the time, and upon sufficient grounds. Previous threats, or even acts of hostility, how violent soever, will not excuse the slayer, but there must be some words or overt acts at the time

clearly indicative of a present purpose to do the injury. Past threats and hostile actions or antecedent circumstances can only be looked to in connection with present demonstrations as grounds of apprehension. To constitute the defense, the belief or apprehension of danger must be founded on sufficient circumstances to authorize the opinion that the deadly purpose then exists, and the fear that it will at that time be executed. The character of the deceased for violence, as well as his animosity to defendant, as indicated by words and actions then and before, are proper materials for the consideration of the jury on the question of reasonable apprehension. So, a case must not only be made out to authorize the fear of death or great harm, but such fear must be really entertained, and the act done under an honest and well-founded belief that it is absolutely necessary' to kill at that moment to save himself from a like injury." The learned judge is not laying down any new doctrine, but combatting an erroneous deduction from the settled rulings.

In *Williams* v. *State,* 3 Heis., 376, 394, a similar case, the language of Judge Caruthers is cited and approved, and the words "at the time," and "at the moment," were underscored in the manuscript opinion of Nicholson, Ch. J., and printed in italics. The language was again cited with approval in *Draper* v. *State,* 4 Baxt., 251. The charge sustained in this case was in these words: "To excuse the homicide, the danger of life, or of great bodily harm, must be real, or honestly believed to be so at the time, and on reasonable grounds; the danger must be apparent and

17—VOL. 6.

imminent and existing at the very time, or believed to be so, and on reasonable grounds." To this charge the very same objection was urged as is made to the charge now under consideration, viz: "That the jury is instructed that to excuse the killing the danger must exist or be really apprehended at the very time, or at the moment when the fatal blow is struck, and deprives him of the defense if the danger of apprehension existed a moment before or after the fatal blow was given, but did not in fact exist at the time when the blow was given." The answer of Judge Deaderick, who delivered the opinion, is: " If defendant had no such apprehension at the very time at which the blow was given that produced the death, of course there is nothing upon which the excuse of self-defense can rest. The existence of a reasonable apprehension of danger is the sole ground upon which the defense can rest, and if it does not exist at the time of the doing of the act, the act itself cannot be excused."

Perhaps the words " at the time," or " at the moment," have been unnecessarily used by circuit judges in cases in which they were strictly applicable. Judge Caruthers, who first used them *arguendo,* was combatting the proposition that acts or threats upon another occasion than that of the killing, might be relied on to justify the deed. What he meant, and what subsequent judges in general mean, by the use of the words, was and is to assert emphatically that only acts or threats which form a part of the *res gestæ* of the killing, will justify the killing. In cases like *Rippy*

*v. State,* and *Williams* v. *State,* where the facts require such instructions, they are strictly applicable.

In nearly every other case, although they may not be necessary, they are not erroneous.    The reasonable belief of danger and the actual fear must undoubtedly exist at the very moment the fatal deed is committed, although the greatest peril may precede the act by a small but appreciable interval of time, or the real danger might only follow if the act be not done, by a like small but appreciable interval of time: *Fortenburg* v. *State,* 55 Miss., 403.

In either of these contingencies, the danger is really "apparent, imminent and existing," or reasonably believed to be so at the time, as well as the consequent fear.    A man in such peril is not bound to wait until he is stricken, nor to measure time by a second watch.    The courts of other States, in ordinary cases, use the same language.    "The danger," says Thompson, J., "must appear so imminent at the moment of the assault as to present no alternative of escaping its consequences except by resistance": *Logue* v. *Commonwealth,* 2 Wright (Pa.), 265; 1 Bish. Crim. Law, sec. 305, note.

There may be exceptional cases where the words, or special stress laid upon them in the charge, may tend to mislead.    Such a case came before us at the last term at Knoxville, in *Allsup* v. *State,* and Judge Freeman, who delivered the opinion, took occasion to define the true rule applicable to all cases.    The justification must rest on the facts and circumstances of the entire transaction in which the killing occurs,

taken as a series of events, and the danger must be real or believed to be real on reasonable grounds, and acted on in good faith by the defendant under the actual fear superinduced. There has, in fact, been no change in the law of self-defense, as embodied in our early cases, and the nearer the law of those cases is adhered to the better. There is error in the charge under consideration, but it is an error in favor of the defendant, of which he cannot complain. It fails to call attention to the important qualification that the defendant is in no fault, for. if in fault he cannot excuse himself as for a killing in self-defense, unless he has used "all means in his power to escape" before resorting to the fatal blow.

There is no error in the charge against the defendant. Nor is there any conflict between the ruling in this case and the ruling in *Greer* v. *State,* 6 Baxt., 629. The error in the charge in that case, as well as in the charge in *Young* v. *State,* 11 Hum., 200, was in saying that to make out the defense the defendant must show that the act was done to protect his own life, or to protect him from such great bodily harm as would endanger his life, whereas great bodily harm, whether it endangered life or not, would be sufficient. There is no such error in this case.

The circuit judge also charged, that if defendant killed the deceased to prevent a trespass on the premises of his employer, and not the perpetration of a felony, it would be murder in the second degree. It is suggested, not urged, that this is too strict. But the law has been so laid down from the earliest times

and is still adhered to, if the killing, as in this case, be with a deadly weapon: 1 Hawk. P. C., 33; 1 Bish. Crim. Law, sec. 857, 875; *Marks* v. *Borum,* 1 Baxt., 87.

Exception is also taken to the following charge: "If the defendant got his gun and went out to meet the deceased, to expel or drive him off the premises of the employer, and he shot at him without other provocation, and provoked the deceased to make an assault upon him with a drawn knife, and he then shot and killed him to repel such assault, he will be guilty of murder in the second degree."

The killing with a deadly weapon to prevent a mere trespass on realty is, as we have seen, murder. The case supposed by the charge, therefore, is where a person voluntarily provokes a fight with a deadly weapon, and kills. This, by all the authorities, is murder in the second degree, without more. To reduce the offense below that grade, the defendant must do all in his power to escape: 5 Yer., 459; 7 Hum., 479; 4 D. & B., 491.

There being no error, the judgment must be affirmed.