**STATE of Tennessee, Petitioner,**

v.

**Frank Allen McCRAY, Respondent.**

Supreme Court of Tennessee.

July 15, 1974.

David M. Pack, Atty. Gen., Nashville, for petitioner; R. Jackson Rose, Asst. Atty. Gen., Nashville, of counsel.

Joseph J. Levitt, Jr., Rufus W. Beamer, Jr., Knoxville, for respondent.

## OPINION

FONES, Justice.

Frank Allen McCray was convicted of second degree murder and sentenced to from ten to fifteen years in the penitentiary. The majority opinion of the Court of Criminal Appeals reversed and ordered a new trial, finding from an analysis of the testimony that, "—it is substantially and essentially uncontradicted upon this record that the defendant acted only in his neces-

sary and proper self-defense in killing the deceased . . . ." We granted the State's petition for certiorari because we agreed with the dissenting opinion that under the evidence in this case defendant's plea of self-defense presented a jury issue.

The homicide occurred in front of Bobby Nelson's place, located on the northeast corner of Texas and Sherman Streets, in Knoxville. Bobby Nelson's white Ford was parked parallel with Sherman Street and perpendicular with Texas, with the front-end facing Texas Street.

Defendant, deceased and others were engaged in a crap game, using the hood of Nelson's car as a crap table. Defendant was running the crap game and deceased was losing. Deceased made accusations that someone was taking his money or that he was being cheated. According to defendant, deceased chased him counterclockwise in a circle around the white car two or three times, when defendant "just got tired of running." Thereupon, "—when I stopped he began to go in his pocket and started towards me and that's when I shot him." Defendant testified that deceased pulled his right hand out of his pocket and he thought it had a knife in it, but acknowledged on cross-examination, that deceased never got his left hand in position to open the knife. Defendant says deceased was four or five feet from him when he fired the fatal single shot. Several times the defendant says deceased "kept walking toward me."

The undisputed medical testimony is that the point of entry of the bullet was on the right side of the neck and "went in a downward fashion"; that the bullet had to enter from almost behind the person or from the side. Dr. Davidson was asked the following question:

"Q. Could that bullet have come from a person facing him, in your medical opinion, if the defendant was facing him?

A. In my medical opinion, I don't think so, no."

We agree with the observation of the majority of the Court of Criminal Appeals that the course of a bullet, after impact, is not always predictable and may be largely inconclusive as to the positions of both the shooter and the target, but it is not the downward course of the bullet that is significant, but the place of entry. That evidence is inconsistent with defendant's version of the homicide.

If deceased was chasing defendant in a circle counterclockwise, deceased's right side would not be vulnerable to a bullet from defendant's gun. Defendant testified that he stopped on the passenger side of the car at the front and deceased came around the rear of the car and "kept walking toward me", clearly implying a face to face confrontation.

Officer Huskey testified that after defendant's arrest he was advised of his constitutional rights, signed a waiver, but would not give a written statement. He answered a few questions, giving the names of eight persons who were present when the homicide occurred, none of whom Huskey was able to locate. Huskey sketched the intersection on a piece of paper and at Huskey's request, defendant positioned the Nelson car, and put an X where deceased was and an X where defendant was at the time the shot was fired. The paper, introduced as exhibit 4, has the X's on opposite sides of the Nelson car and Huskey testified that defendant stated he shot across the car. Defendant denied that he made that statement, and insisted that in placing the X's he was showing where deceased and he were standing while shooting craps.

No knife was found on deceased or in the vicinity of his body. The record is devoid of any evidence that defendant pointed his gun at deceased and warned him not to advance any further upon threat of being shot. Not a single witness testified

that deceased had opened the blade of his knife, if indeed he had one.

"To excuse a homicide on the ground of self-defense, the danger to life, or of great bodily harm, must be either real, or honestly believed to be so, at the time of the killing, and such belief of danger must be founded on reasonable grounds. There must not only be sufficient cause to authorize the fear of death or great bodily harm, but such fear must be really entertained, and the killing done under an honest and well-founded belief that it is absolutely necessary in self-defense." McGill v. State, Tenn.Cr.App., 475 S.W. 2d 223 (1972)

From May v. State, 220 Tenn. 541, 420 S.W.2d 647 (1967) comes the statement that, " . . . one cannot go further than is reasonably necessary in defense of his person".

Also well established in the law of excusable homicide is the requirement that the slayer must have employed all means in his power, consistent with his own safety, to avoid danger and avert the necessity of taking another's life. 40 Am.Jur.2d, Homicide, Section 160 et seq.

On the evidence in this case, the jury could have sustained the plea of self-defense. On the other hand, it is clear that the jury could, as they did, reject said plea.

It is elementary that a person bent on combat or mortal wounding of another, armed with an unopened knife, who suddenly finds himself looking into the barrel of a loaded pistol, must instantly lose all enthusiasm for the fray.

The jury in this case could have found, from defendant's own testimony, that the necessity to take the life of deceased had not matured, for lack of warning that he had a pistol and would use it, or that deceased did not present a real threat of loss of life or great bodily harm, with an unopened knife, walking toward defendant four or five feet away, defendant possessing a loaded pistol.

The jury decided the issue in favor of the State's theory, the trial judge approved the verdict and the evidence does not preponderate against that finding.

We reverse the Court of Criminal Appeals and affirm the conviction.

DYER, C. J., CHATTIN and McCANLESS, JJ., and LEECH, Special Justice, concur.