**STATE of Tennessee, Plaintiff–Appellee,**

v.

**Larry Lynn KENNAMORE, Defendant–Appellant.**

Supreme Court of Tennessee.

Sept. 8, 1980.

Jennifer Helton Small, Asst. Atty. Gen., Nashville, for plaintiff–appellee; William M. Leech, Jr., Atty. Gen., Nashville, Jon Kerry Blackwood, Asst. Dist. Atty., Somerville, Terry Abernathy, Sp. Prosecutor, Selmer, of counsel.

William S. Nunnally, Greeneville, for defendant–appellant.

## OPINION

HARBISON, Justice.

Appellant was convicted of voluntary manslaughter for the fatal shooting of Jimmy Cardwell on November 17, 1977. As the case comes to this Court, the only questions presented involve jury instructions given or declined by the trial judge. The Court granted certiorari primarily to consider whether the so–called "true man" rule of self–defense should be adopted in this state, as requested by appellant.

Appellant shot and killed Cardwell on the evening of November 17, 1977, near a campfire which the two young men and their companion Mike Cox had built. The evidence indicates that there had been no quarrel or dispute among the persons involved on the date in question. Decedent Cardwell had been drinking rather heavily during the day. Tests taken after his death revealed a blood alcohol content of .22 percent. In the past there had been ill feeling between Cardwell and appellant, arising out of a fight in which appellant had defeated the decedent and also out of an incident in which appellant, acting as an undercover agent for the local police, had given information implicating relatives of the deceased in illegal liquor sales. On the date of the homicide decedent had told companions he intended to avenge the wrongs he felt appellant had committed. These threats had not been communicated to appellant prior to the shooting.

The record shows without dispute that while appellant was kneeling to add fuel to the fire, Cardwell struck him violently on the head from behind with a soft drink bottle. Appellant sustained a scalp laceration three or four inches in length, which required extensive sutures, and he was hospitalized for about four days following the incident.

Immediately after the assault, appellant obtained his shotgun and killed Cardwell

with a single shot. Appellant and Mike Cox gave significantly different accounts of the events following Cardwell's assault upon appellant.

Cox testified that appellant got up from his kneeling position and attacked the deceased, fell upon him and was astride him and hitting him. Cox pulled appellant off of Cardwell. He testified that appellant then ran to his truck, which was several feet distant, took a shotgun from it and shot the deceased, who was twenty to twenty-five feet away, obviously physically beaten, and still trying to get up after being knocked down by appellant. Cox said he pleaded with appellant not to shoot, but the latter stepped around him, swore at the deceased and fired.

On the other hand, appellant testified that Cardwell kicked him after hitting him with the bottle. Appellant appealed to Cox for help and got none. He said that earlier he had removed his shotgun from the truck when he and the decedent had heard some noise in the woods nearby. He said that he loaded the shotgun at that time and set it against the tailgate of the truck. After he was assaulted by decedent, however, appellant said that the gun had been moved and that he saw it in the grass on the opposite side of the campfire. Fearing that he was about to be further assaulted or attacked by the decedent, he seized the weapon, wheeled and fired the fatal shot. He said that the decedent was then ten to fifteen feet away. Appellant said that he was disoriented, frightened and in shock from the injuries which he had sustained. He feared that the deceased might be armed and suspected that Cox was implicated in a conspiracy with the deceased to kill him; consequently he fired in self–defense. He said that only three to five seconds elapsed between the assault upon him and the firing of the shot. At a preliminary hearing Cox had estimated that thirty seconds elapsed after appellant got his gun until he fired.

The conflicting evidence was submitted to the jury by the trial judge under general instructions taken almost verbatim, with some amplifications, from the early case of

*Rippy v. State*, 39 Tenn. 217 (1858). As given, the instructions permitted the jury to consider all of the circumstances involved in the shooting, including the contention of appellant that he used force which was reasonable and justified in repelling an assault in a situation where he was either in actual danger of death or serious bodily injury, or where it reasonably appeared to him that such a condition existed.

■ The principal contention of appellant is that the instructions given made no mention of the subject of retreat or of the circumstances under which a person attacked would be justified in not retreating. Counsel for appellant tendered the following special request which was declined:

"If the defendant when assaulted was without fault and in a place where he had a right to be and was placed in reasonable apparent danger of losing his life or of receiving great bodily harm, he need not retreat, but may stand his ground, and repel force by force, and if, in the reasonable exercise of his right of self–defense, he kills his assailant, he is justified and should be acquitted."

There is a substantial split of authority among the various jurisdictions with respect to whether a person assaulted must retreat before taking the life of his assailant. The common–law rule generally required such a retreat, if reasonably feasible, except in defense of one's home or habitation or in the discharge of official duty. In a number of jurisdictions, however, it has been held that the victim of an unprovoked assault need not retreat but may stand his ground and repel the attack with whatever force is reasonably required. Homicide resulting from such self–defense is justified. *See generally* 1 *Wharton's Criminal Law and Procedure* §§ 235–240 (R. Anderson ed. 1957); 2 *Wharton's Criminal Law* § 126 (14th ed. C. Torcia 1979); 40 Am.Jur.2d, *Homicide* §§ 163–165 (1968); Annot., 18 A.L.R. 1279 (1922).

The latter rule, sometimes referred to as the "true man" doctrine, has never been adopted in previous decisions in this state, nor do we think that it represents the bet-

ter view of the subject. It is true that in *Morrison v. State,* 212 Tenn. 633, 371 S.W.2d 441 (1963), the Court used language indicating that there is no duty to retreat where the victim of an assault is without fault, is in a place where he has a right to be and is put in reasonably apparent danger of death or great bodily harm. This language, however, was used in a case in which the accused was defending his residence or habitation, and the opinion must be read and construed in light of that fact situation. It does not stand as general authority for the adoption of the "true man" rule in this state. As precedent, we limit it to the defense of one's home or habitation.

In the recent case of *State v. McCrary,* 512 S.W.2d 263 (Tenn.1974), the Court noted that earlier authorities had established the rule that one can go no further than is reasonably necessary in defense of his person. It then stated:

"Also well established in the law of excusable homicide is the requirement that the slayer must have employed all means in his power, consistent with his own safety, to avoid danger and avert the necessity of taking another's life." 512 S.W.2d at 265.

■ The Tennessee Pattern Jury Instructions refer to withdrawal by the accused only in connection with his having made the first attack, an issue not involved here. *See* TPI–Crim. 36.02 (1978). Otherwise they treat the subject of self–defense in general terms. They stress the reasonableness of the force used, of the apprehension created and of the conduct of the accused under all of the facts and circumstances.[1] The language of the trial judge was generally couched in terms of an earlier opinion of this Court rather than of the somewhat similar Pattern Instructions. As given, his charge permitted the jury to consider all of the circumstances of the case, including the unprovoked assault upon the accused, the past bad relations between the parties, and the necessity, or lack thereof, for the use of deadly force in self–defense.

We find no error in the instructions given, nor do we think that the trial judge was in error in refusing to include in his instructions the "true man" doctrine. Also, in the absence of a proper special request, we find no error in the failure of the trial judge to charge the jury specifically upon any legal duty of the accused to retreat or a right to stand his ground. As previously stated, sharply conflicting testimony had been presented in the trial, and many differing inferences or conclusions could be drawn therefrom by the triers of fact. Under appellant's version of the facts, there was no occasion to retreat nor any reason to consider the subject because he said that he had no opportunity to retreat, that he was injured from the assault which had been inflicted upon him and had neither time nor ability to leave the scene in safety or to make any sort of rational decision in that regard. Under the testimony of the eye-witness Cox, appellant had overpowered his assailant, effectively disabled him and thereupon, after arming himself, needlessly fired the fatal shot.

■ We think that the availability of an avenue of retreat and the practicality of using it, or the absence thereof, are factors or circumstances to be considered in determining whether an accused was justified in taking the life of another in self–defense. These are only two of many of the surrounding facts and circumstances to be taken into account in any given case, however. If the subject of retreat is to be referred to in the jury instructions, it should not be the "true man" rule contended for by appellant but only one of the factors to be considered by the jury. Since the tendered instruction in this case was not legally correct, there was no error in its refusal.

We believe that the foregoing was implicit in *State v. McCrary, supra,* but we think that it should be made explicit and suggest that the following instruction would be appropriate on the issue of retreat:

---

1. *See also* T.C.A. § 38–102, providing that resistance "sufficient to prevent the offense" may be made by a party about to be injured to

prevent an offense against his person or property.

The law of excusable homicide requires that the defendant must have employed all means reasonably in his power, consistent with his own safety, to avoid danger and avert the necessity of taking another's life. This requirement includes the duty to retreat, if, and, to the extent, that it can be done in safety.

■ In the present case, in our opinion, it was for the jury to determine whether or not appellant was justified in the action which he took. The instructions given were adequate to enable the jury to make that determination. A correct instruction on the law of retreat would not have been beneficial to him, and its omission was, therefore, not reversible error.

■ The judgments of the Courts below are affirmed at the cost of appellant, and the cause is remanded to the trial court for execution of the judgment. However, the offense for which petitioner was convicted does not carry with it a rendition of infamy, and the recitation to that effect in the judgment of the trial court will be deleted.

BROCK, C. J., and FONES and COOPER, JJ., concur.

HENRY, J., dissenting (see separate opinion).

HENRY, Justice, dissenting.

I would reverse this conviction and remand for a new trial on the basis of the failure of the trial judge to charge the jury on defendant's principal theories of defense.[1]

The trial judge correctly charged the jury on the general law of self–defense. While defendant entered such a plea, his theory of defense was not merely that he slew his adversary under a reasonably founded fear that it was necessary that he do so in order to save his own life, or protect himself against great bodily harm. His whole defense was that he acted with split–second precision, without time for deliberate thought or reflection; that he thought he

was dying and was literally "scared to death"; that he had sustained a brain concussion and was "addled"; and, as the majority phrased it he had "neither time nor ability to leave the scene in safety or to make any sort of rational decision in that regard."

None of these factors was covered in the trial judge's charge. The duty to retreat versus the right to stand and fight, was heavily involved, and yet, the trial judge did not even allude to retreat in his charge.

These issues were squarely before the Court. They demanded a charge. As Mr. Justice Brock held in *State v. Thompson*, 519 S.W.2d 789 (Tenn.1975):

The general principle in criminal cases is that there is a duty upon the trial judge to give a *complete* charge of the law applicable to the facts of the case and the defendant has a right to have *every issue* of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge. (Emphasis supplied). 519 S.W.2d at 792.

This is an automatic right; it is not dependent upon any special request. It flows from the constitutional duty of the trial judge to "declare the law." Article VI, Section 9, Constitution of Tennessee. The failure of the trial judge to charge on a material issue is fundamental and reversible error.

Defendant tendered a special request grounded on *Morrison v. State*, 212 Tenn. 633, 371 S.W.2d 441 (1963), which contains the precise language insisted upon by defendant. *Morrison* is the first Tennessee case to explore the duty to retreat. Its significance is a matter of debate among the bench and bar. *See, e. g.,* the dissenting opinion in the Court of Criminal Appeals correctly pointing out that it

. . . does not limit the application of the retreat doctrine to the home. It adopts the broad general proposition that one who is where he has a lawful right to be is under no duty to retreat and then

---

1. Defendant, in this Court, does not assign any error relating to the sufficiency of the evidence.

Therefore, sufficiency is not a question before the Court.

treats the particular proposition of a specific place.

R. Kendrick, in *Criminal Law and Procedure–1963 Tennessee Survey*, 17 Vand.L. Rev. 977, 979 (1977), adopts the view that *Morrison* "classified Tennessee with the majority 'no–retreat rule'" jurisdictions as to self–defense generally and does not limit application of the no-retreat rule to defense of the habitation.

On the other hand, many lawyers and judges view this phase of the *Morrison* holding as *dicta*. The majority opinion simply confines *Morrison* to its own facts and holds that "[i]t does not stand as general authority for the adoption of the 'true man' rule."

Because *Morrison*, by dicta or otherwise, is the only Tennessee case on the retreat issue, and further because it adheres to the majority rule in this country, the trial judge either should have given the requested charge *or* should have given a full and correct charge on the duty to retreat.

I discuss the proof, in the light of the appellant's insistences, not with a view to questioning sufficiency, but solely to validate the foregoing views with respect to the duty to charge.

First, it should be pointed out that this tragedy occurred in the night, on a lonely country road, with only the defendant, the deceased and a crony of the deceased present. The deceased bore defendant a grudge based upon past occurrences and repeatedly, on the afternoon and early night of the crime, had announced that he was going to beat up defendant with a bottle; that he was going to "get" him; or similar threats to even the old score. None of this is disputed.

Defendant was heavily under the influence of alcohol, if not drunk. His blood test showed a content of .22% ethyl alcohol. This is not disputed.

Pursuant to his announced plan he lured defendant into accompanying him, along with three of his companions, to the Burnt Bridge, on a county road, for the ostensible purpose of drinking and conviviality. This is not disputed.

Two of deceased companions did not want to participate in the venture and, at first, did not go to the Burnt Bridge. Later, they went alone to this area and begged deceased not to carry his plan into execution. This is not disputed.

It is not disputed that suddenly and without warning, while defendant had his back turned, the deceased approached him from the rear and broke a Coca–Cola bottle over his head.

It is not disputed that the wound or gash in defendant's head was three or four inches long and had to be sewn up. The fatal shot was fired three to five seconds after the injury, which was of a type calculated to cause mental impairment. He sustained a cerebral concussion and was in a Memphis Hospital four full days. He was in great pain and thought he was dying at the time he fired the fatal shot.

Immediately after the killing he went to the home of the Chief of Police who, testifying for the State, said "[h]e was screaming, he was in shock, completely hysterical." Elsewhere he said defendant was "screaming," "crying," and "hysterical."

The following question and answer given by the defendant, and as a part of his theory, is relevant:

Q. Did you think at that time that the fight was over?

A. In my book it wasn't. I was scared that he was fixing to finish me off.

The following portion of defendant's testimony made a full charge on retreat absolutely mandatory:

Q. Is there any reason that you couldn't have gotten in that truck and gotten out of there, Mr. Kennamore?

A. Like I said, I was out of my head. I was scared. I thought I was dying and all I was doing was trying to protect myself.

Q. You were scared; you thought you were dying, but your only thought was to get a gun and go back to the scene and clear things up.?

A. What if I jumped in the truck and they'd have drug me out?

\* \* \* \* \* \*

Q. Was that your only thought; just to get that gun and go back there and settle that score?

A. Wasn't no score to settle. I was protecting myself.

Q. Nobody jumped on you, though, or prevented you from getting in that truck and getting on down that road and getting out of there, was it?

A. Everything happened real fast.

Questions of preponderance or sufficiency are not involved. We are dealing with a retreat issue that was not charged.

This case comes to us on three assignments of error. The majority did not even allude to the last two.

Petitioner's second assignment of error reads as follows:

That the Court of Criminal Appeals erred in affirming the Trial Court's refusal to charge as follows on the subject of the right to use deadly force in self–defense for a small period of time following the assault:

For the defendant to be excused for the taking of a life of another on the ground of self–defense, the reasonable belief of danger and the actual fear of the one who attacked him must exist at the moment the fatal deed is committed, even though the greatest danger to the defendant may have preceded the act of killing by a small but appreciable interval of time.

This is a correct statement of the law taken almost verbatim from *Hull v. State*, 74 Tenn. 249, 260 (1880), and should have been charged. It was not covered in the main charge and was vital in a case wherein the killing occurred after the attack as opposed to simultaneously therewith.

Petitioner's third assignment reads as follows:

That the Court of Criminal Appeals erred in affirming the Trial Court's refusal to charge as follows on the subject of the standard of reasonableness to which a victim of an assault who suffers serious injury shall be held:

If the defendant was without fault when he was the victim of an assault committed with deadly force or an assault which results in great bodily harm, he is entitled to repel the force of the attacker with whatever force that reasonably and honestly appears to be necessary under the circumstances, and, if in repelling such attack, the defendant acts in the reasonably held belief that he must use deadly force, and if while suffering from a serious wound suffered in the attack he used deadly force near in time to when the wound was afflicted, his use of such deadly force is justified as an act of self–defense.

Again, this is a correct statement of the law and should have been charged.

It is inconceivable to me that in a case where retreat figured so prominently that the charge was silent as to the controlling factors.

The jury should have been charged that there must be an available, safe and effective avenue of retreat; that there must have been ample time; that defendant's physical and mental condition were factors that should be taken into consideration; that consideration must be given to all the circumstances as they reasonably and honestly appeared to the defendant; and that the whole transaction should be looked to as a series of events. Moreover, the jury should have been instructed that all factors should be considered in the light of the fact that failure to retreat is a circumstance to be considered, along with all others, in order to determine whether the defendant went further than he was justified in doing and that a failure to retreat is not categorical proof of guilt. This is a fair resume of the holdings of our courts.

I would remand for a new trial.