**230**

STATE of Tennessee, Respondent,

v.

James Lewis STURDIVANT, Petitioner.

Supreme Court of Tennessee.

Sept. 8, 1980.

Larry J. Logan, W. Kent Jones, Huntingdon, for petitioner.

William M. Leech, Jr., Atty. Gen., Richard S. Maxwell, Asst. Atty. Gen., Nashville, William R. Kinton, Jr., Dist. Atty. Gen., Trenton, A. H. Schoonover, Ted Neumann, Asst. Dist. Attys. Gen., Trenton, for respondent.

OPINION

HARBISON, Justice.

Petitioner was convicted of voluntary manslaughter and was sentenced to serve from four to ten years in the state penitentiary. His conviction was affirmed by the Court of Criminal Appeals. This Court granted his petition for certiorari to give further consideration to the issues, particularly to petitioner's plea of self–defense.

Petitioner shot and killed Ricky Sutherland after an argument which occurred while they were drinking beer at a tavern near Paris, Tennessee. Petitioner and his brother–in–law, Talley Stubblefield, went to the tavern together. A controversy arose between Stubblefield and one of the State's witnesses, Bill Edwards. Apparently Stubblefield had previously been ejected from the bar because of misconduct, and Edwards questioned Stubblefield's presence at the establishment. Ultimately petitioner and decedent Sutherland became involved. Petitioner and Stubblefield testified that decedent made racial slurs and threats against them. Both of them are black, while the decedent Sutherland and Edwards were white.

Although on the night of the homicide Stubblefield told the sheriff that he heard no foul language or threats, at trial he testified that Sutherland threatened petitioner. Because of the quarrel among the four men, the bartender ordered all of them to leave. When they got outside the tavern, Sutherland went to the west end of the building where his truck was parked. Petitioner went to his own automobile, which was closer to the front door than the point where Sutherland had parked his vehicle.

Sutherland apparently got a shovel out of his truck and started back toward petitioner. Petitioner had a shotgun in his automobile. He armed himself with this and shot the decedent twice, once in the chest and once in the back.

The records contains many discrepancies and much conflicting testimony as to the events which occurred in the tavern and those surrounding the shooting. Petitioner insists that the decedent was a bigger man than he and that he fired in self–defense when this large, angered individual came toward him brandishing a shovel in a menacing manner. Decedent was twenty–six years old, and petitioner thirty–nine. Petitioner claimed to have been suffering from a previous injury and said that he was under the care of physicians, although the record contains no medical testimony in this respect.

The witnesses gave differing accounts as to how close the decedent came to petitioner before the latter fired. There was some evidence that Sutherland got no closer than twenty–five or thirty feet from the petitioner. The sheriff's estimate, based upon the shot patterns and distribution, was about thirteen feet. Petitioner was standing near the front of his automobile and fired twice while decedent was approaching.

Petitioner and his brother–in–law gave an entirely different version. They contended that the decedent chased petitioner around the latter's automobile two or three times, and that the petitioner finally was able to get his shotgun out of the automobile while running to escape his attacker. Other witnesses testified that no such chase occurred and that decedent at no time swung at the petitioner with his shovel or inflicted any injury upon him. Petitioner testified that he was struck by the shovel and painfully injured. Neither Stubblefield nor any other witnesses confirmed that testimony.

■ In our opinion this was a proper case for determination by the jury. There was conflicting testimony, and the credibility of all of the witnesses, both for the State and the defense, was in issue. There was testimony which, if credited by the jury, indicated that the petitioner himself injected any racial overtones which the incident may have had. Even if the racial slurs alleged by the petitioner did occur, they did not, in and of themselves, amount to more than provocation, reducing the degree of homicide. The words alone could not justify the taking of human life.

■ In this case, all four participants in the drinking, talking, and cursing that transpired in the Burger Bar went out the front door at approximately the same time. The sheriff's diagram of the scene of the crime revealed that the victim's truck was parked on the west side of the building, and the petitioner's car was parked almost directly in front of the door, but the truck could be seen from the petitioner's car. The distance between the two vehicles is not shown, but, from other measurements, it was more than thirty feet.

It is readily apparent from the recitation of the various versions of what transpired outside the tavern, that the jury could have found that petitioner had the opportunity to leave the premises in safety before the victim could have reached a life–threatening position with his shovel.

There is no evidence in the record that petitioner issued any word of warning or fired a warning shot. A shotgun loaded with three shells that may be fired rapidly is far more deadly than a shovel, and the jury had before it evidence from which they could have found that the necessity for taking the victim's life had not matured when the fatal shot was fired. *See State v. McCray*, 512 S.W.2d 263 (Tenn. 1974).

In the case of *State v. Kennamore*, 604 S.W.2d 856, (Tenn. 1980), which is being released simultaneously with this opinion, the Court has dealt with the subject of retreat as an aspect of the law of self–defense. In the present case the trial judge gave standard instructions on the law of self–defense. He did not charge, nor was he requested to charge, upon the issue of retreat. The subject was not referred to in the trial record. Nevertheless, we are of the opinion that the trial judge in the present case could not have given a charge on the duty to retreat which would have been favorable to the petitioner, without committing reversible error.

Petitioner's plea of self–defense was clearly presented as an issue for the jury to determine, and the charge given was a full and fair statement of the law on that subject. As indicated, if retreat had been dealt with specifically, the charge would have been unfavorable to the petitioner, under the facts of this case.

Accordingly the judgment of the Court of Criminal Appeals and that of the trial court are affirmed at the cost of petitioner.

BROCK, C. J., and FONES, and COOPER, JJ., concur.