IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 6, 2015

## VICTOR CLARK v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-14-231    Donald H. Allen, Judge**

_____

**No. W2015-00186-CCA-R3-PC  -  Filed March 30, 2016**

_____

Victor Clark ("the Petitioner") was indicted for two counts of attempted second-degree murder, two counts of aggravated assault, one count of reckless endangerment, and one count of employing a firearm during the commission of a dangerous offense. After a jury trial, the Petitioner was acquitted of both counts of attempted second-degree murder but convicted of all other charges. In this post-conviction proceeding, the Petitioner contends that he received ineffective assistance of counsel. The post-conviction court denied relief. Upon review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Victor Clark.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

*Trial*

The victims, Luteika Tyus and Antonio White, testified that, on the day of the offense, Ms. Tyus got into an "altercation" with the Petitioner's mother regarding

messages Ms. Tyus had written on Facebook alleging that the Petitioner had broken into the victims' home.[1] According to Ms. Tyus, the altercation ended when the Petitioner's mother threw a beer bottle at her and Mr. White pushed the Petitioner's mother out of the house. Ms. Tyus followed the Petitioner's mother outside so that she could fight the Petitioner's mother. Ms. Tyus then saw the Petitioner and Mr. Jones exit the alley next to the victims' home. As they approached, Ms. Tyus asked Mr. White to come outside. According to Mr. White, he came outside with a gun and told the Petitioner, "Stay over there on your side of the street and don't come over here because I've got something for you." After Mr. White and Ms. Tyus went back inside their home, the Petitioner and Mr. Jones fired several shots at the victims' house, some of which came through the front window. One of the bullets struck Ms. Tyus in the hand. Mr. White also testified that he believed there was a third, unidentified gunman shooting at the back of Mr. White and Ms. Tyus's home.

The Petitioner's trial counsel cross-examined each victim at trial. Mr. White, in his cross-examination, admitted that he had "an issue" with the Petitioner because the Petitioner had broken into his house and truck and stolen some of his property. However, Mr. White admitted that no charges were filed against the Petitioner and "[t]he only proof [Mr. White] got [was] street credibility." Mr. White also acknowledged that the signed statement that he gave to police was not consistent with his trial testimony because it only identified the Petitioner as the shooter and did not mention of Mr. Jones. However, he insisted that he also identified Mr. Jones as a shooter and that the officer wrote down the statement incorrectly.

Ms. Tyus, in her cross-examination by Mr. Jones's counsel, admitted that she called Mr. White outside before the shooting because she wanted him to fight the Petitioner. She said she did not see Mr. White carrying a gun when he came outside. Ms. Tyus admitted that she testified at the preliminary hearing that Mr. White did have a gun when he came outside the house and that he had it "out." However, she maintained that she did not see Mr. White with a gun that night and that her preliminary hearing testimony was false. During cross-examination by the Petitioner's trial counsel, Ms. Tyus admitted that she did not like the Petitioner. Trial counsel also asked Ms. Tyus, "You do agree that the transcript [of the preliminary hearing] showed you said that you testified that [Mr. White's] gun was out?" Ms. Tyus responded, "Uh-huh."[2] Trial counsel also noted that Ms. Tyus testified in the preliminary hearing that the shots were

---

[1] To assist in the resolution of this proceeding, we take judicial notice of the record from the Petitioner's direct appeal. See Tenn. R. App. P. 13(c); State v. Lawson, 291 S.W.3d 864, 869 (Tenn. 2009); State ex rel Wilkerson v. Bomar, 376 S.W.2d 451, 453 (Tenn. 1964).

[2] Based upon its use in the transcripts, "uh-huh" appears to indicate an affirmative response.

coming from behind her house. Additionally, Ms. Tyus admitted that she had "a lot of issues" with the Petitioner and that she made comments on her Facebook about the charged incident and other incidents with the Petitioner, including a post where she stated that she hoped Mr. White would not have to shoot the Petitioner and Mr. Jones. Ms. Tyus also acknowledged that, after her truck had been broken into,[3] she wrote "Come on P-a\*\* n\*\*\*\*\*. I am ready for you b\*\*\*\* a\*\* n\*\*\*\*\* . . . These b\*\*\*\* a\*\* little boys living around me fixing to make me get a charge." Further, Ms. Tyus confirmed that this comment referred to the Petitioner and Mr. Jones, but she said she would not classify it as a threat. Ms. Tyus also admitted that, prior to the shooting, she posted a comment on Ghetto News about the Petitioner, Mr. Jones, and their mothers. It appears that Ms. Tyus's Ghetto News post is what started the altercation between Ms. Tyus and the Petitioner's mother. The post was admitted as an exhibit and says:

> Once again these petty a\*\* so called gang members on Gordan Street can't get a hustle so got to steal from the next people. They mommas clean out toilets so they have a better life, but obviously it wasn't good enough. I'm telling you people yo [sic] panties and boxers ain't even safe so beware of [the Petitioner] and [Mr. Jones] ho a\*\* n\*\*\*\*\*s will steal your whole house because they ain't got sh\*\*.

The Petitioner did not testify, and he did not present any evidence in his own defense. The jury acquitted the Petitioner of both counts of attempted second-degree murder but convicted him of two counts of aggravated assault, one count of reckless endangerment, and one count of employing a firearm during the commission of a dangerous offense. The trial court imposed an effective eighteen-year sentence. The Petitioner filed a timely notice of appeal, but the appeal was voluntarily dismissed.

*Post-Conviction Proceedings*

The Petitioner subsequently filed a Petition for Post-Conviction Relief and several amendments (collectively, "the Petition"). The Petition alleged that the Petitioner received ineffective assistance of counsel for the following reasons: (1) the Petitioner's rights against double jeopardy were violated when he was charged with both attempted second-degree murder and aggravated assault; (2) trial counsel failed to adequately cross-examine the victims about their prior inconsistent statements; (3) trial counsel failed to

---

[3] It is not clear from the record whether the victims were alleging that the Petitioner broke into a single truck that belong to both Ms. Tyus and Mr. White or whether the Petitioner broke into multiple vehicles.

present evidence that the Petitioner was acting in self-defense; and (4) trial counsel failed to object to testimony about the Petitioner's prior bad acts.[4]

At a hearing on the Petition, the Petitioner claimed that "[a]ggravated assault is a lesser to the offense of attempted second degree murder" and stated that his trial counsel was ineffective because she did not argue to the trial court that the charged offenses violated the Petitioner's rights against double jeopardy. Additionally, the Petitioner noted that the victims had made several inconsistent statements under oath about the offense. The Petitioner stated, "They lied during the whole trial. They lied during the whole preliminary hearing. They just lied." The Petitioner averred that trial counsel did not cross-examine the victims about their inconsistent statements. However, the Petitioner admitted that Ms. Tyus was presented with her preliminary hearing testimony at trial and the discrepancies between her testimonies were noted, but the Petitioner maintained that it was his co-defendant's counsel, not trial counsel, who cross-examined Ms. Tyus about those discrepancies. The Petitioner also claimed that Ms. Tyus and Mr. White's respective testimonies contradicted each other and trial counsel failed to cross-examine them about the discrepancies.

The Petitioner also stated that trial counsel was ineffective for failing to request a special jury instruction as to witness credibility. The Petitioner explained that both victims were "bringing up cases unrelated to the case [being tried]" such as the Petitioner's showing them guns, calling and threatening to kill the victims, breaking into houses and cars, and other allegations that the Petitioner was "known for shooting at people." The Petitioner also claimed, "They lied saying [he] broke in their house and all types of things. Just lying." The Petitioner said such testimony allowed the jury to convict him because he had been "having problems" with the victims.

The Petitioner also stated that trial counsel was ineffective for failing to present evidence of self-defense. The Petitioner noted that Ms. Tyus's trial testimony indicated that Mr. White pointed a gun at the Petitioner immediately before the offense. He also stated that trial counsel should have informed the jury that the Jackson Police Department did not take Mr. White's gun into evidence or check to see if Mr. White's gun had been fired.

On cross-examination, the Petitioner acknowledged that he was acquitted of both counts of attempted second-degree murder, but he stated that he "really [didn't] think it was much of [trial counsel's] doing." Instead, he thought

---

[4] The Petitioner alleged other claims in the Petition. However, we will only address the claims of ineffective assistance of counsel that are raised on appeal.

…it was just the doing of the jury just sitting there listening to all of the bull crap the victim was up here saying and they just wasn't . . . They sat up here and listened to all this bull crap. They could tell it was a bunch of bull crap just like anybody who reads the transcripts and reads the whole case, you can tell that [the victims] were full of BS.

The Petitioner hypothesized that the jury convicted him of aggravated assault because the judge, in reading the jury instructions, "was telling them that they should find [the Petitioner] guilty of everything that [the Petitioner] had on there." Further, the Petitioner admitted that the jury heard all of the inconsistent testimony, but he claimed that trial counsel did not cross-examine the witnesses about their inconsistent statements. Regarding his double jeopardy claim, the Petitioner agreed that the law controlled his claim even if it differed from his own opinion of the issue.

As to his claim of self-defense, the Petitioner acknowledged that he did not testify in his own defense. He further stated, "I'm not admitting to being there. I'm saying if I was involved in that incident in any type of way that the victims got up here and admitted that they provoked me with a firearm and intended to use a firearm on me and it would have been self[-]defense." In response, the State informed the Petitioner that, in order to assert self-defense, he must have admitted that he was present at the scene of the offense and that he committed the alleged acts. The Petitioner responded, "Right. That's my point. [Trial counsel] failed to address that to the Court that if my client was there, my client was acting in self[-]defense." The Petitioner confirmed that he was not admitting to being present at the scene of the offense.

Trial counsel testified that she was retained to represent the Petitioner after his preliminary hearing but before he was indicted. Trial counsel stated that it was her standard practice to provide her clients with a pen and pad of paper so that they can communicate with her during trial and yet allow trial counsel to hear witnesses' testimony and listen for opportunities to object. However, throughout the trial, the Petitioner kept verbally noting inconsistencies in the witnesses' testimony. Trial counsel explained that she had prepared extensively for trial and "knew the case like the back of [her] hand" and she had already identified the inconsistencies in the victims' respective testimonies. Trial counsel stated that the victims had "told several stories" and that their stories did not line up with what they said in their original statements. Trial counsel cross-examined both victims about the inconsistent statements and their "flip-flopping." Trial counsel acknowledged that the jury heard all of the inconsistent testimony, and she noted that she was able to impeach Ms. Tyus on cross-examination by using the transcript from Ms. Tyus's preliminary hearing testimony. Additionally, trial counsel "heavily" argued the inconsistent statements during her closing argument. Trial counsel also

included the witnesses' inconsistent statements in the motion for new trial, but the trial court found that the inconsistencies were resolved by the jury's verdict.

Trial counsel stated that she would have explored a self-defense trial strategy if there was "any evidence that would have even possibly [alluded] to it." However, the Petitioner maintained that he was never at the scene. Trial counsel explained that, in order to assert self-defense, the Petitioner would have had to admit that he was on the scene.

Trial counsel also recalled that the Petitioner was charged with aggravated assault as an alternative theory to attempted second-degree murder. She agreed that, if the Petitioner had been convicted of both, the convictions would have merged.

On cross-examination, trial counsel recalled that Mr. White testified that he had a gun and that he exited his home planning "to do something to [the Petitioner] with it." Trial counsel argued that statement to the jury.

In its order denying post-conviction relief, the post-conviction court specifically credited trial counsel's testimony. The post-conviction court noted that the Petitioner claimed he was never at the scene of the shooting. As such, trial counsel's defense strategy was to highlight the inconsistencies between the victims' respective stories to call into doubt their identification of the Petitioner as one of the shooters. The post-conviction court found that trial counsel "thoroughly and competently [cross-examined] both witnesses as to their alleged inconsistent testimonies." Additionally, the post-conviction court held that there was no proof that the Petitioner acted in self-defense. Further, the post-conviction court found that the Petitioner's rights against double jeopardy were not violated when he was acquitted of attempted second-degree murder and convicted of aggravated assault. In summary, the post-conviction court held that the Petitioner had failed to prove that trial counsel's performance was deficient and that he was prejudiced by any alleged deficiency.

## Analysis

On appeal, the Petitioner claims (1) that his rights against double jeopardy were violated when he was charged with both attempted second-degree murder and aggravated assault; (2) that trial counsel was ineffective for failing to present a theory of self-defense; (3) that trial counsel was ineffective for failing to properly cross-examine the victims about their inconsistent statements; and (4) that trial counsel was ineffective for failing to object to the testimony about the Petitioner's prior bad acts.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828,

830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. Kendrick v. State, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. Id.; Fields, 40 S.W.3d at 456 (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." Fields, 40 S.W.3d at 456 (citing Henley, 960 S.W.2d at 579); see also Kendrick, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. Kendrick, 454 S.W.3d at 457.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Strickland, 466 U.S. at 687. Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. Finch v. State, 226 S.W.3d 307, 316 (Tenn. 2007) (citing Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

- 7 -

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

In this case, the Petitioner first claims that his rights against double jeopardy were violated when he was indicted for both attempted second-degree murder and aggravated assault. This court has previously held that raising a double jeopardy claim in a post-conviction action when the petitioner "fail[ed] to present such a claim for determination in any proceeding before a court of competent jurisdiction which the claim could have been presented waived the claim for post-conviction purposes." Sean Earl Jones v. State, No. M2006-00664-CCA-R3-PC, 2007 WL 1174899, at *7 (Tenn. Crim. App. Apr. 20, 2007), perm. app. denied (Tenn. Sept. 17, 2007). Accordingly, because the Petitioner failed to present a double jeopardy claim at trial and he voluntarily dismissed his direct appeal, his standalone double jeopardy claim has been waived.

To the extent that the Petitioner argues that trial counsel was ineffective for failing to argue at trial that the Petitioner's double jeopardy rights were violated, the Petitioner is not entitled to relief. Trial counsel noted that the attempted second-degree murder and aggravated assault charges were presented as alternative theories of the crime. The State may prosecute a defendant on alternative theories of a crime, and if the jury convicts the defendant under both theories, the "merger and imposition of a single judgment of conviction protects against double jeopardy[.]" State v. Torrez Talley, et al, No. W2003-02237-CCA-R3-CD, 2006 WL 2947435, at *29 (Tenn. Crim. App. Oct. 16, 2006), perm. app. denied (Tenn. Mar. 19, 2007). Accordingly, we conclude that the double jeopardy protections of the Fifth Amendment were not implicated in this case when the Petitioner was acquitted of one theory of prosecution and convicted of the alternative theory. See Carl Randle v. State, No. W2014-00136-CCA-R3-PC, 2014 WL 3585889, at *10 (Tenn. Crim. App. July 18, 2014). Trial counsel was not deficient for failing to raise a double jeopardy argument at trial.

Second, the Petitioner claims that trial counsel was ineffective for failing to present a theory of self-defense. However, trial counsel testified that the Petitioner insisted that he was not present at the scene of the offense. Moreover, in his testimony at the post-conviction hearing, the Petitioner maintained that he was not present at the scene of the offense. In order to plead self-defense, a defendant must have a genuine, well-founded fear that he was in danger of death or great bodily harm and that the actions he took were necessary in self-defense. See State v. McCray, 512 S.W.2d 263, 265 (Tenn.

1974); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). Logically, a defendant asserting a theory of self-defense must admit that he was present at the scene of the offense, that he feared he was in danger of death or serious bodily harm, and that he took action against another individual to protect himself from that harm. In this case, the Petitioner denied, and continues to deny, that he was present at the scene of the offense. As such, trial counsel was not deficient for failing to present a self-defense theory at trial.

Next the Petitioner claims that trial counsel was ineffective for failing to properly cross-examine the victims about their inconsistent statements. However, trial counsel testified that she cross-examined the victims and confronted them with their statements to police and that she confronted Ms. Tyus with her testimony from the preliminary hearing. The transcripts of the victims' trial testimony shows that both trial counsel and Mr. Jones's counsel extensively cross-examined each of the victims about their prior inconsistent statements. Therefore, we conclude that the Petitioner has failed to show that trial counsel's cross-examination of the victims was deficient.

Finally, the Petitioner claims that trial counsel was ineffective for failing to object to testimony about the Petitioner's prior bad acts. However, the Petitioner fails to identify which "prior bad acts" he believes should have been excluded, and he does not provide any argument as to how trial counsel could have sought their exclusion. As such, his claim is subject to wavier. See Tenn. Ct. Crim. App. R. 10(b). Nevertheless, we will address the merits of the Petitioner's claim. From the Petitioner's testimony at the post-conviction hearing, it appears that he believed trial counsel should have sought to exclude evidence that the Petitioner was a gang member, that he had shown the victims guns on prior occasions, that he was "known for shooting at people," and that he had broken into cars. However, a review of the trial transcript does not reveal any testimony which indicates that the Petitioner was "known for shooting at people." Further, it is clear that trial counsel actively sought to introduce evidence that the victims had accused the Petitioner of being a gang member, of showing them guns, and of breaking into their cars and home in order to show that the victims had motive to identify the Petitioner as the shooter. We will not second-guess a reasonable trial strategy. See Granderson, 197 S.W.3d at 790. As such, we conclude that trial counsel was not deficient for failing to seek to exclude testimony about the Petitioner's alleged prior bad acts. The Petitioner is not entitled to relief on any of his claims.

## Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE