# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 18, 2011

## STATE OF TENNESSEE v. BRANDON TRENT PATTERSON

**Direct Appeal from the Circuit Court for Maury County**
**No. 19279     Robert L. Holloway, Judge**

---

**No. M2010-01573-CCA-R3-CD - Filed March 9, 2012**

---

Defendant, Brandon Trent Patterson, was indicted by the Maury County Grand Jury for attempted first degree murder.  By agreement between the parties, Defendant was also charged by criminal information with one count of aggravated assault.  Following a jury trial, Defendant was acquitted of attempted first degree murder and convicted of aggravated assault.  Defendant was sentenced to eight years of imprisonment.  Defendant appeals his conviction, asserting that the evidence was insufficient to sustain the conviction.  After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined.  JUDGE J.C. MCLIN was originally on the panel to which this case was assigned.  Judge McLin died September 3, 2011, and we acknowledge his faithful service to this Court.

Claudia S. Jack, District Public Defender; and Michelle W. VanDeRee, Assistant Public Defender (on appeal), and John S. Colley, III, Columbia, Tennessee, (at trial), for the appellant, Brandon Trent Patterson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; T. Michel Bottoms, District Attorney General; Daniel J. Runde, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

*Facts*

Officer Keith Fall of the Columbia City Police Department testified that on July 11, 2009, at 12:27 a.m., he was dispatched to Dodson's Grocery Store (hereinafter "Dodson's" or "Dodson's Grocery"), a restaurant and nightclub in Columbia in response to an assault incident. When Officer Fall arrived, he spoke to the store owners, Troy and Mathew Dodson, who gave him a knife, which they said they found in the back of the store where the incident occurred. Officer Fall observed blood on the pavement in the parking lot. Officer Fall testified that the restrooms were adjacent to a storage area in the back of the restaurant. He learned that the victim's name was Scott Holcomb. Officer Fall collected some of the victim's clothing and also recovered the victim's cell phone, which was damaged and looked like it had been struck. Defendant was not at the scene and was arrested the following day. Officer Fall's investigation revealed that the victim had been unarmed.

Christi Vanvolkinburg testified that she went with Defendant and others to Dodson's Grocery on the night of July 11, 2009, to "sing Karaoke and drink some beer." Ms. Vanvolkinburg testified that she, Joy Morton, and Heather Morton went to the restroom together. She testified that she heard people "yelling outside the door for [them] to hurry up." When they came out of the bathroom, Heather Morton and Gina Dodson began fighting. Ms. Vanvolkinburg was standing near the bathrooms, where several people were fighting. She was talking to Lisa Nichols when her friend Scott Holcomb said that he had been stabbed. When asked whether she saw "five or more people on top of [Defendant], hitting him, or anything like that?" she did not recall seeing that. She testified that there was a "circle of people fighting," and she put her hand over the victim's wound and walked him to the front door and called an ambulance. She testified that the ambulance "was taking too long to get there so [she] put him in his vehicle and his girlfriend, Lisa Nichols, drove him to the hospital."

Gina Dodson testified that her father owned Dodson's Grocery. She described the layout of the store and testified that the area around the restrooms in the back of the store was used for storage for "old restaurant equipment." On the day of the incident, her family had a birthday party for her daughter, and later they went swimming at Scott Holcomb's house. She testified that she had "one drink that evening." She and Lisa Nichols had "fruit juice with rum in it." She did not see Mr. Holcomb drink any alcohol. Sometime around 10:00 p.m., Ms. Dodson, Ms. Nichols, and Mr. Holcomb went to Dodson's. They walked in and went "straight to the back where the cooler [was]" to talk to Ms. Dodson's dad and her brothers, Troy and Allen Dodson. Before leaving, Ms. Dodson and Ms. Nichols went to the restroom. Ms. Dodson testified that the door to the women's restroom was locked, so she

-2-

"just knocked on the door to go in and the people on the other side of the door didn't like it." She testified that she was knocking on the door, "and they kind of started hollering through the door." When the door opened, three females came out, and "one of them was just irate, mad." Ms. Dodson did not know their identities at the time, but she testified that she later learned that the first person who came out was Heather Morton. Ms. Dodson testified that Ms. Morton began yelling at her, and Ms. Dodson "told her to leave." Ms. Dodson testified that Ms. Morton "looked a little drunk." As Ms. Dodson walked past her to go into the bathroom, she felt something brush against her, and she looked back and saw Heather Morton and Lisa Nichols "on the ground" fighting. Ms. Dodson tried to pry Ms. Morton's hands out of Ms. Nichols' hair. She knelt down with them and heard "the commotion" behind her but did not see anything. She then heard "Scott [Holcomb] hollering, 'he cut me. He just stabbed me.'" Ms. Dodson saw that the victim was bleeding and she took him to the front of the store and out to his truck. Lisa Nichols drove them to the hospital.

Anthony Troy Dodson, Gina Dodson's brother, testified that Defendant arrived at Dodson's at approximately 10:30 p.m. He also saw Ms. Dodson arrive with Lisa Nichols and Scott Holcomb around 10:30 p.m. He testified that he went to the back of the store to the restrooms and saw several people, men and women, waiting in line to use the restrooms. He testified that he did not see "a group of men jump on [Defendant] and start hitting him." He saw some "ladies" exit the restroom and begin arguing with his sister and Lisa Nichols. Heather Morton and Lisa Nichols then started fighting. He then saw Scott Holcomb and Defendant start fighting. They were shoving and pushing each other and then began punching each other. He did not see who initiated the fight. Mr. Dodson attempted to break up the fight, but they moved around him and resumed fighting. Mr. Dodson was trying to break up the fight between Lisa Nichols and Heather Morton when some other people "heard the ruckus" and came back to break up the fight between Defendant and the victim. He then heard the victim say that he had been stabbed. Mr. Dodson walked over to the victim and saw "part of his skin sticking out of his stomach." He then walked the victim to the front of the store and took off the victim's shirt and held it over his wound. After the victim was taken to the hospital, Mr. Dodson's nephew, Matthew Dodson, told him that he had found the knife. Mr. Dodson walked to the back of the store and found a knife "slid under" some carpet. Mr. Dodson put the knife in a plastic bag and gave it to the police officer who responded to the scene. On cross-examination, Mr. Dodson testified that he had "a couple of beers" that night. Mr. Dodson did not see the victim drinking alcohol, but he "didn't pay any attention."

Lisa Nichols testified that she was dating the victim, Scott Holcomb, at the time of the incident. She testified that earlier in the day, on the date of the incident, she and the victim and her 14-year-old daughter had gone to a birthday party at the skating rink for Gina Dodson's daughter. After that, they went back to the house she shared with Mr. Holcomb

to "let the kids swim." At approximately 10:00 p.m., Ms. Nichols, Mr. Holcomb, and Ms. Dodson went to a store to buy cigarettes and then went to Dodson's. Before they left Dodson's, they went to the back of the store to use the restrooms. Ms. Nichols testified that Ms. Dodson tried to open the door to the ladies' room and it was locked. They "waited several minutes," and Ms. Dodson knocked again. Someone inside the bathroom said something that, Ms. Nichols testified, "sounded hastily" or "rude." They waited "a few more minutes," and Ms. Dodson knocked again. Someone inside "cursed" and "sounded angry." Ms. Nichols testified that, "[m]oments later, the door [wa]s flung open and three girls walked [out]." She testified that Heather Morton, one of the people inside the bathroom, "stumbled coming out [and] her [sic] and Gina automatically started arguing." Ms. Nichols testified that Gina Dodson turned to walk away from Heather Morton, and Ms. Morton "smacked her in the back of the head." Ms. Nichols grabbed Ms. Morton, and Ms. Morton hit her with "something hard" that she thought was a beer bottle. They began fighting. Ms. Morton was grabbing Ms. Nichols' hair, and Ms. Dodson was trying to pry Ms. Morton's fingers loose. Ms. Nichols testified that she stood up and heard Mr. Holcomb say that he had been stabbed. She asked who had stabbed him, and Mr. Holcomb said, "he did," pointing at Defendant. She saw Defendant walking towards a set of double doors, and she stopped him. She testified that she "grabbed [Defendant] and . . . pushed him up against the wall." She asked Mr. Holcomb, "are you sure it's him?" and he replied that he was "sure." She looked at Defendant and asked "how you could do that [to] somebody[?]" and Defendant "gave [her] the coldest look . . . ." She saw that Mr. Holcomb was bleeding, and she "knew [she] had to get him out of there and get him to the hospital." She did not see or hear a group of men attack the victim. She testified that the victim's "intestines were bulging out" and there was "blood everywhere." She drove him to the hospital, and he was later flown by Life Flight to Vanderbilt Hospital.

Ms. Nichols testified that the incident happened about an hour after they arrived, and she estimated that they arrived between 10:00 and 10:30 p.m. She also testified that she did not recall seeing anyone else waiting in line to use the restrooms. She testified that she did not see how many people were involved in the fight between the victim and Defendant. She also testified that the victim's cousin, John Mooningham, arrived with Defendant and left with Defendant.

Michael Scott Holcomb, the victim in this case, testified that on the day of the incident, he went to the skating rink with Lisa Nichols and her daughter for a birthday party for Gina Dodson's daughter. After the party, several people went to his house to swim. Mr. Holcomb testified that he did not consume any alcohol that day. He testified that at approximately 10:00 p.m., or "a little after," he, Gina Dodson, and Lisa Nichols arrived at Dodson's Grocery. He spoke to Gina's father and to her brother, Troy Dodson. He testified that he ordered a beer and drank about half of it. He testified that he also spoke to a "distant

cousin," John Mooningham. He testified that after they had been there for "an hour, an hour and a half at the most," they were getting ready to leave when Ms. Dodson and Ms. Nichols said they were going to the bathroom. After they had been gone "awhile," he went to the back of the store to check on them. When he got to the restrooms, he saw Gina Dodson, Lisa Nichols, Troy Dodson, and "an older black-haired lady" standing around talking. He asked what they were doing and that was when "everybody come [sic] out of the restrooms" and they began "arguing and wrestling." He then saw Defendant grab a beer bottle from someone, and it looked like he "was gonna hit Gina or Lisa in the back of the head [with it]." Mr. Holcomb "grabbed [Defendant] by his neck and his arm" and pushed him against a wall and "shook a beer bottle out of his hand." Then Mr. Holcomb "released" Defendant and turned back towards Gina and Lisa "to see how they were doing." While his back was turned to Defendant, he got "shoved" from behind. He turned around and Defendant grabbed him by his collar. Mr. Holcomb pushed Defendant's hand away and hit him in the face. Defendant fell down, and Mr. Holcomb was standing over him. Mr. Holcomb testified, "[T]he next thing, he come up and he stabbed me." When Mr. Holcomb realized that he had been stabbed, he began "hollering, 'he stabbed me.'" Defendant then "tried to run out the door."

Mr. Holcomb testified that Defendant stabbed him three times. Mr. Holcomb was taken to Maury Regional Hospital and then flown by Life Flight to Vanderbilt Hospital, where he underwent surgery for lacerations to his intestines. He testified that he was hospitalized for five days. He had stab wounds above his knee, in his stomach, and in his chest. He testified that Defendant also tried to stab him in his hip, but his cell phone protected his body from being stabbed. Mr. Holcomb testified that he was unarmed on the night of the incident.

Greg Morton testified on behalf of Defendant. He testified that he went to Dodson's on the night of the incident with Defendant, Heather Morton, Joy Morton, and John Mooningham. He testified that he had been friends with Defendant for four or five years. Mr. Morton testified that he drank three beers at his house before going to Dodson's, and he drank three or four beers while at Dodson's. At some point, Mr. Morton went back to the restrooms, and when he opened the double doors, he saw people fighting. He testified that there was a "guy looking at [him] like he was watching the door," and that there were "[a]bout five guys or six, had [Defendant] up against the wall. [Defendant's] left eye was bleeding." Mr. Morton testified that he did not see anyone hit Defendant, "but they was [sic] holding him up against the wall." Defendant said, "[H]elp me" to Mr. Morton. Mr. Morton also saw that his daughter Heather was on the floor, and two women were standing over her. Mr. Morton testified that the man he saw standing by the door said to him, "[I]t just don't [sic] concern you, we got this." When Mr. Morton told him that it was his daughter on the floor, the man hit Mr. Morton in the jaw with his fist. Troy Dodson and "Bubba" Dodson

then grabbed Mr. Morton by the arms and took him back through the double doors. They then brought his daughter to him. Mr. Morton took Heather outside to his van and went back inside to get Defendant and Mr. Mooningham. Mr. Mooningham went outside, and Mr. Morton saw "four or five [people] escorting [Defendant] toward the door." Mr. Morton testified that, at first, "they didn't want to let him go," but the people escorting Defendant did let him go. Defendant left with Mr. Morton. The following morning, the police came to Mr. Morton's house and arrested Defendant. Mr. Morton did not see anyone get stabbed.

Heather Morton testified that on the night of the incident, she went to Dodson's with her father, Greg Morton, her stepmother, Joy Morton, Defendant, and John Mooningham. She was 17 years old at the time. While at Dodson's, she went to the restroom with her stepmother, Joy Morton, and Christi Vanvolkinburg. While they were inside the restroom, Ms. Morton heard a knock on the door and someone say, "Get out; my daddy owns this place." When she came out of the bathroom, Gina Dodson and Lisa Nichols "jumped on [her]." She testified that they shoved her and immediately started hitting her in the head. She testified that she fell to the floor and looked over and saw "six or seven [men] that had [Defendant] up against the wall." She testified that Mr. Morton came back to that area, and the men who had Defendant against a wall told him "they had it tooken [sic] care of." She testified that they "just all got up and left. And that's all I know." Ms. Morton testified that she drank two glasses of rum before going to Dodson's. On cross-examination, she testified that she did not see any of the men holding Defendant against the wall hitting Defendant, that she did not see Mr. Holcomb get stabbed, and that after leaving Dodson's, Defendant did not say anything about having been assaulted by several men or having stabbed someone in self-defense.

At trial, Defendant admitted that he stabbed Mr. Holcomb but testified that he did it "because [he] was trying to take care of [him]self." He testified, "I was on the ground being hurt. I was just trying to get him off of me." Defendant testified that Mr. Holcomb was "on top of [him], hitting [him] in the face." He testified that there were others, including Troy and Matthew Dodson, who were "kicking [him] in the ribs and in the face." He testified, "[T]hey were just beating [him] up pretty bad." He testified that he was not trying to kill Mr. Holcomb. Defendant testified that he was previously convicted of three counts of auto burglary in 2002. In 2008, he was convicted of three more counts of auto burglary and one count of felony theft.

On cross-examination, Defendant testified that he drank "a few beers" at Mr. Morton's house before going to Dodson's. He drank "probably three" beers at Dodson's. He went to the back of the store to use the restroom and saw Ms. Morton, Ms. Nichols, and Ms. Dodson fighting. When he tried to break up the fight, Mr. Holcomb hit him in the eye. Defendant denied that he was about to strike Ms. Nichols with a beer bottle. Defendant

testified that he did not know what motive Mr. Holcomb, Troy and Matthew Dodson, and "a couple more" unidentified men had to beat him up, but that he had beat one of them earlier that night playing a game of pool. Defendant never sought warrants against any of the men for assaulting him. Defendant testified that he did not seek medical treatment at a hospital, but that he was seen by a doctor at the Maury County Jail following his arrest the morning after the incident.

*Analysis*

Defendant contends that the evidence at trial was insufficient to sustain his conviction for aggravated assault. Defendant does not point to a specific element of aggravated assault that the State failed to prove but asserts that he was acting in self-defense. Therefore, we will address both the sufficiency of the evidence to establish the elements of aggravated assault and the sufficiency of the evidence to establish that the defendant was not acting in self-defense.

When reviewing the sufficiency of the evidence on appeal, the standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This Court may not reweigh or reevaluate the evidence but should presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), superseded by statute on other grounds as stated in *State v. Barone*, 852 S.W.2d 216, 218 (Tenn. 1993).

Following the standard of review set out above, we conclude that the elements of aggravated assault were established in the instant case. To support Defendant's conviction for aggravated assault, the State was required to prove that the defendant knowingly caused bodily injury to the victim by using a deadly weapon pursuant to Tennessee Code Annotated sections 39-13-101(a)(1) and -102(a)(1)(B).

There is ample evidence to support a finding that Defendant caused bodily injury to the victim by using a deadly weapon. The victim testified that, while the two men were engaged in a fight, Defendant stabbed him multiple times with a knife. Several witnesses testified that they saw the fight between the victim and Defendant and heard the victim say

that he had been stabbed. The victim received life-threatening stab wounds to his body. Defendant himself testified and admitted to stabbing the victim with a knife.

Turning to Defendant's contention that he acted in self-defense, we must conclude that there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant was not acting in self-defense. Tennessee Code Annotated section 39–11–611(b)(2) allows for an affirmative defense of self-defense when a person is engaged in a situation where he reasonably believes there is a danger of death or serious bodily injury.

> (2) Notwithstanding [Tenn. Code Ann.] § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:
> (A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;
> (B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and
> (C) The belief of danger is founded upon reasonable grounds.

T.C.A. § 39–11–611(b)(2).

Whether a defendant acted in self-defense is for the jury to decide. *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). When the defendant's proof raises the defense, it does not render the State's evidence insufficient but presents a question of fact for the jury to decide. *State v. McCray*, 512 S.W.2d 263, 265 (Tenn. 1974). The jury is free to reject the self-defense claim. *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

In the instant case, Defendant testified in his own behalf. According to Defendant's version of the events, he walked to the back of the store where he saw a fight between Heather Morton and Gina Dodson and Lisa Nichols. He was going to attempt to break up the fight when the victim and several others attacked him and began beating him. He pulled a knife from his pocket, opened it, and began stabbing the victim.

In contrast to Defendant's version of what happened, the State's witnesses testified that they did not see a group of men beating Defendant. In fact, witnesses who testified during Defendant's proof did not corroborate that portion of his testimony. Heather and Greg Morton both testified that they saw Defendant being held against a wall by several men, but neither witness saw the men hit Defendant. Defendant's behavior following the incident also tends to negate self-defense. Defendant left the scene of the incident without waiting for police to arrive, the knife was found under a piece of carpet, Defendant did not seek medical

attention after leaving the store that night, and Defendant did not tell the friends with whom he left that he had to act in self-defense. Finally, there was no evidence that the victim was armed. We conclude that the evidence accredited by the jury was that Defendant acted with unreasonable force and that he was not under a threat of imminent danger of death or serious bodily injury when he stabbed the victim. Taking the evidence in the light most favorable to the State, the jury found that the State negated Defendant's claim of self-defense beyond a reasonable doubt. Defendant is not entitled to relief on this issue.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE